UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY DYKES, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 4:21-CV-00083-RWS<br>) |
| MISSOURI HIGHER EDUCATION LOAN AUTHORITY | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

This case is before me on the Defendant's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). ECF No. [10]. Defendant, Missouri Higher Education Loan Authority (MOHELA) argues that it is entitled to Eleventh Amendment sovereign immunity because it is an arm of the state of Missouri. MOHELA also argues it is entitled to immunity under Mo. Rev. Stat. § 537.600 and that Plaintiff failed to adequately allege the amount in controversy necessary to establish diversity jurisdiction under 28 U.S.C. § 1332. For the reasons discussed below I will grant Defendant's Motion for Judgment on the Pleadings.

### BACKGROUND

In 2002, Plaintiff Jeffrey Dykes took out a federal student loan to pay for his education. His loan was assigned to MOHELA for loan servicing. From 2011 until

2016, Plaintiff was on an Income Driven Repayment Plan, which renewed annually.  In 2017, based on an increase in Plaintiff's annual income, his monthly payment changed to more than $850 per month.  Due to prior financial obligations, plaintiff was unable to pay the $850 a month and could only afford roughly $150 per month. Plaintiff states that MOHELA rejected his proposal to adjust his repayment plan to $150 monthly payments. Additionally, in 2017 Plaintiff's wife was diagnosed with cancer.  Her treatment increased Plaintiff's monthly expenses by $350. Because of this new financial obligation, Plaintiff was unable to make payments and was delinquent on his loan.  In response to communication from MOHELA's delinquency department, Plaintiff requested their assistance in repaying his loans.  In response to his inquiries, Plaintiff alleges that MOHELA stated that there was no alternative repayment plan and that it had never heard of such a plan. Instead, MOHELA offered Plaintiff an Income Driven Repayment plan, which would have required monthly payments of  $861. Plaintiff could not afford this plan.  Plaintiff also alleges that at this time, MOHELA denied him the option of an Income Based Repayment plan, which would have resulted in a monthly payment of $350.  From the pleadings it is unclear if the Defendant provided Plaintiff a reason for the denial. Plaintiff also alleges that beginning in 2018 he was qualified for an Alternative Repayment Plan consisting of monthly payments of $150. Plaintiff does not indicate how long the Alternative Repayment

Plan would have been in place or whether it would be dependent on yearly financial statements.

Plaintiff now brings this suit on behalf of himself and others similarly situated. He brings three claims for negligence per se, negligent misrepresentation, and equitable estoppel. Plaintiff claims that MOHELA misrepresented the repayment options available, leading to unnecessary periods of forbearance and eventual default. In response, Defendant filed a motion for judgment on the pleadings arguing it is entitled to sovereign immunity, that Plaintiff failed to state a claim for equitable estoppel, and that I do not have subject matter jurisdiction over the claim.

## LEGAL STANDARD

When considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), I must "accept as true all factual allegations set out in the complaint and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law[.]" Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citation omitted).

I review a motion for judgment on the pleadings under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. See Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009). Therefore, I consider all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see also Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Although a complaint need not contain "detailed factual allegations," it must contain sufficient factual allegations "to raise a right to relief beyond the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In addition to the complaint, I may consider exhibits that are attached to the complaint as well as materials necessarily embraced by the complaint, without having to convert the motion to one for summary judgment. Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018); Ryan v. Ryan, 889 F.3d 499, 505 (8th Cir. 2018). Materials necessarily embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Ryan, 889 F.3d at 505 (internal quotation marks and citations omitted).

4

## DISCUSSION

In its motion for judgment on the pleadings, MOHELA makes three distinct arguments. First it argues that it is entitled to sovereign immunity because it is an arm of the state and/or entitled to immunity under Mo. Rev. Stat. § 537.600. Second, it argues that the Plaintiff failed to state a claim for equitable estoppel. Lastly, MOHELA argues that I do not have subject matter jurisdiction because the Plaintiff has failed to establish that the amount in controversy satisfies 28 U.S.C. § 1331. For the reasons discussed below I will grant the Defendant's motion.

Eleventh Amendment Sovereign Immunity

The Eleventh Amendment recognizes sovereign immunity, which bars individuals from bringing suites for damages against unconsenting states in federal courts. Thomas v. St. Louis Bd. Of Police Com'rs., 447 F.3d 1082, 1084 (8th Cir. 2006). Eleventh Amendment immunity also extends to arms of the state. Whether an entity is an arm of the state turns on its relationship to the state under state law. Gorman v. Easley, 257 f.3d 738,743 (8th Cir. 2001) (overturned on other grounds). Additionally, the Supreme Court, in Edelman v. Jordan, stated that the Eleventh Amendment bars "suit[s] in federal court[s] by private parties seeking to impose a liability which must be paid from public funds in the state treasury." Edelman v. Jordan 415 U.S. 651, 663 (1974). As a result, when determining whether a particular agency is an arm of the state, I must consider both "the agency's degree

5

of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be paid with state funds." Thomas, 447 F.3d at 1084; See also Public School Retirement System of Missouri v. State Street Bank & Trust Co., 640 F.3d 821, 827 (8th Cir. 2011).

First, I must consider MOHELA's relationship with the State of Missouri and the amount of independence MOHELA has from the State. See Id. MOHELA was established by statute in 1981. Mo. Rev. Stat. § 173.350 et seq. The enabling statute established MOHELA as "a public instrumentality and body corporate" and deemed exercises of the powers conferred in the legislation to be "the performance of an essential public function." Mo. Rev. Stat. § 173.360.  It also gave MOHELA the authority "to sue and be sued" and "to acquire, hold and dispose of personal property." Mo. Rev. Stat. § 173.385.  These characteristics indicate that MOHLEA enjoys some operational independence from the State of Missouri, see Pub. Sch. Ret. Sys. Of Missouri, 640 F.3d at 827-28.

But other portions of the enabling legislation  give the state significant control over MOHELA. For example, the Statute authorizes the governor to appoint five members of the seven member board. Mo. Rev. Stat. § 173.360. The other two members of the board are prescribed by statute. Id. The first must be a member of the coordinating board for higher education and the second must be the Commissioner of Higher Education. Id. Additionally, MOHILA is assigned by

6

statute to the Missouri Department of education, which requires MOHELA to provide a yearly report on its income, expenditures, bonds, and other forms of indebtedness issued. Mo. Rev. Stat §§ 173.445. The statute also limits MOHELA's ability to sell certain loans without approval of the Missouri Department of Higher Education, Mo. Rev. Stat. § 173.385.1(8), and imposes restrictions on how it conducts its business, including placing limitations on investments, requiring distributions to the Lewis and Clark Discovery Fund, and placing limitations on Stafford loan origination. Mo. Rev. Stat. §§ 173.385-392.

Based on my reading of the Missouri Higher Education Loan Authority Act, I think the first factor weighs slightly in MOHELA's favor. Although MOHELA enjoys many of the freedoms of a political subdivision, like the ability to sue and be sued and issue revenue bonds, the State still exercises significant political and operational control over MOHELA.

Now I must consider whether the state would be legally or functionally liable for a judgment against MOHELA. See U.S. ex rel Oberg v. Pennsylvania Higher Educ. Assistance Agency, 804 F.3d 646, 652 (4th Cir. 2015). The parties do not dispute that MOHELA, not the State, is legally liable for judgments against it. But they do dispute whether the State is functionally liable. MOHELA argues that the State is functionally liable for judgments against it because payment of a judgment could impair MOHELA's obligation to contribute to Missouri's Lewis

and Clark Discovery Fund and infringe upon its provisions of tens of millions to the State of Missouri for grants and scholarships. Plaintiff on the other hand argues that the State is isolated from judgment because of MOHELA's authority to issue bonds, its ability to collect payment for loan servicing, and its robust revenues.

When it was established, MOHELA's revenues and liabilities were completely independent of the State's. The enabling legislations stated in relevant part that "[t]he proceeds of all bonds or other forms of indebtedness issued by the authority and of all fees permitted to be charged by the authority and of other revenues derived shall not be considered part of the revenue of the state…, shall not be required to be deposited into the state treasury, and shall not be subject to appropriation by the general assembly." Mo. Rev. Stat. § 173.425 (1981). The statute went on to state that "[t]he proceeds, fees, and revenue shall remain under the exclusive control and management of the authority to be used as required pursuant to sections 173.350 to 173.450." Id. The statute also states that "[t] he state shall not be liable in any event for the payment of the principal of or interest on any bonds of the authority or for the performance of any pledge, mortgage, obligation, or agreement of any kind whatsoever which may be undertaken by the authority." Mo. Rev. Stat § 173.410. Additionally, "[n]o breach of any such pledge, mortgage, obligation, or agreement may impose any pecuniary liability upon the state or any charge upon the general credit or taxing power of the state."

8

Mo. Rev. Stat. § 173.410. These provisions make clear that the legislature intended to create a self-sustaining and financially independent agency.

Then in 2007, the State of Missouri established the Lewis and Clark Discovery Fund.  The fund was established as a partnership between the State and MOHELA.[1] MO. Gov. Mess., May 25, 2007.  Funding for the fund would be provided by MOHELA and then appropriate by the general assembly for capital projects at state colleges and universities.  Mo. Rev. Stat. §§ 173.385 & 173.392. In total, MOHELA was obligated to contribute $350 million to the Lewis and Clark Discovery Fund to be paid in full no later than September 30, 2013. Id Because of the 2008 financial crisis and the suspension of projects funded by the Lewis and Clark Discovery Fund, MOHELA made the decision pursuant to the legislation to delay the required quarterly payments.[2] MOHELA 2020 Annual Disclosures at 20, Dec. 23, 2020. Therefore, although MOHELA has provided the bulk of funding required by the statute, it still has a limited obligation to provide money to the Lewis and Clark Discovery Fund. While a judgment against MOHELA could impact its ability to provide the remainder of the funds to the Lewis and Clark Discovery Fund, this does not make the State functionally liable

---

[1] "While a court generally may not consider matters outside the pleadings on a motion for judgment on the pleadings, exceptions include: 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" von Kaenel v. Armstrong Teasdale, LLP, 943 F.3d 1139, 1143 (8th Cir. 2019)(quoting Williams v. Employers Mut. Cas. Co., 845 F.3d 891, 903–04 (8th Cir. 2017)).
[2] See von Kaenel, 943 F.3d at 1143.

for any judgments against MOHELA. MOHELA's total obligation to the state is limited. Additionally, the statute creating the Lewis and Clark Discovery Fund provides a mechanism for delaying payments if making such payments would materially adversely affect the services and benefits provided or the economic viability of the authority. Mo. Rev. Stat. § 173.385.2. Additionally, a delay in payment would not impact the general revenue of the state. The Lewis and Clark Discovery Fund can only be used for the limited purpose of funding capital projects at state public colleges and universities and supporting the Missouri technology corporation's ability to work with colleges and universities to advance innovative technologies. Mo. Rev. Stat. 173.392. It cannot be used as part of the State's general revenue. Finally, while MOHELA has provided funds to the State of Missouri to fund scholarships, those contributions are not statutorily required. Its contributions may have saved Missouri money, but it should not be considered when determining whether the state would be functionally liable for a judgment against MOHELA.

Based on my review of MOHELA's enabling statute and the history of the Lewis and Clark Discovery Fund, I find that the second factor weighs against finding that MOHELA is an arm of the state. Although a judgment against MOHELA may have a limited impact on the State, the vast majority of MOHELA's funds are segregated from state funds and controlled exclusively by

MOHELA. Additionally, the enabling statute shows that the legislature intended to create a self-sustaining and financially independent agency. See Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 50 (1994) (stating that when an agency is structured such that, as a practical matter, to survive, a judgment must expend itself against the state, common sense and the rationale of the eleventh amendment require that it be protected by sovereign immunity, but there is no such requirement where the agency is structured to be self-sustaining).  Therefore, I find that this factor weighs against MOHELA.

In sum, I find that MOHELA is not an arm of the state and is not entitle to Eleventh Amendment Sovereign Immunity. This conclusion is in line with the Fourth Circuit's decision in U.S. ex. rel. Oberg v. Pennsylvania Higher Education Assistance Agency  and the Third Circuit's decision in Lang v. Pennsylvania Higher Educ. Assistance Agency, which examined a similar statute and entity.  The Defendant did cite to several cases that have found that MOHELA is an arm of the state and therefore entitled to sovereign immunity, but they are not binding on this court and none of them used the Eighth Circuit's arm of the state analysis.[3]

---

[3] Defendant cites three cases that have found that MOHELA is entitled to sovereign immunity. The first, In re Stout is a bankruptcy case from the Western District of Missouri. Although the case concludes that MOHELA is entitled to sovereign immunity, it does not analyze whether it is an arm of the state or even cite to the statutes defining its authority and funding. In re Stout, 231 B.R. 313 (W.D. Mo. 1999). The case instead focuses on whether the Commissioner of Higher Education, when sued in her official capacity was entitled to sovereign immunity. Id. The second case Defendant cites is Phillip Gowens v. Capella University, Inc., et al., a case from the Norther District of Alabama.  Although the court in Gowens fully examine whether MOHELA was an arm of the state, it used the Eleventh Circuit's four factor test, which considers (1) how a state defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. Phillip Gowens v. Capella University, Inc., et al., No. 4:19-cv-362-CLM (N.D. Ala. June 1, 2020).

Mo. Rev. Stat. § 537.600 Immunity

Mo. Rev. Stat. § 537.600 states in relevant part that "[s]uch sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived" in two specific instance, which are not relevant to this suit. Mo. Rev. Stat. § 537.600. Since Plaintiff only brought state law claims against the Defendant, it is entitled to immunity under this provision if it is a "public entity" for purposes of Mo. Rev. Stat. § 537.600.

Immunity under Mo. Rev. Stat. § 537.600 is broader than the immunity provided by the Eleventh Amendment. It extends to municipalities and other public entities that are not protected by the 11th Amendment. See State ex. rel. Regional Justice Information Service Commission v. Saitz, 798 S.W.2d 705, 706 (Mo ban 1990); Langley v. Curators of the University of Missouri, 73 S.W.3d 808 (Mo. Ct. App. 2002); Stacy v. Truman Med. Ctr., 836 S.W.2d 911 (Mo. Ban. 1992); State ex rel. Trible v. Ryan, 745 S.W. 2d 672 (Mo. Banc 1998); State ex rel. Blue

---

The court found that both of the factors regarding money and use of the state treasury only slightly favored MOHELA. Additionally, the Court did not fully examine MOHELA's liability to the Lewis and Clark Discovery Fund or their contributions to scholarships. Lastly, the Court relied in part on In re Stout, which did not fully consider whether MOHELA is an arm of the state. Finally, the Defendant notes that a Florida state court dismissed an action filed by the Plaintiff based on the same underlying facts. The decision however merely cited In re Stout and Mo. Rev. State. § 173.415, 173.445, 173,360, and 173.365, without providing any analysis. See Def. Mem. in Supp. of Mot. for Jdg. on the Pld., Ex. A.

Springs School District v. Grate, 576 S.W.3d 262 (Mo. Ct. App. 2019). Although, the statute does not define the term public entity, the Missouri Supreme Court has provided guidance about determining the reach of the term, particularly as it applied to hybrid entities. Stacy v. Truman Med. Ctr., 836 S.W.2d 911 (Mo. Ban. 1992). In Stacy, the Court delineated three features common to all public entities: "(1) the governmental or public entity must be formed by government itself or by the voters acting as a group; (2) the entity must be controlled by and directly answerable to one or more public officials, public entities, or the public itself; and (3) the entity must perform a service traditionally performed by the government." Estes as next friend for Doe v. Board of Trustees of the Missouri Public Entity Risk Management Fund, 2021 WL 966979 at 7 (Mo. Ct. App. March 16, 2021). "A public entity/corporation that possesses all three of the foregoing characteristics is a public corporation for purposes of sovereign immunity." Id.

Based on the test established in Stacy, MOHELA is entitled to sovereign immunity under Mo. Rev. Stat. § 537.600. MOHELA clearly satisfies the first requirement that "the governmental or public entity must be formed by government itself or by the voters acting as a group." MOHELA was established by statute. Mo. Rev. Stat. § 173.360. It also satisfies the second factor. As discussed previously, the state has significant political and operational control over MOHELA. The enabling statute gives the Governor authority to appoint five

members of the seven member board and the Missouri Department of Higher Education has authority to review MOHELA's financial records.  Mo. Rev. Stat. § 173.385 & 173.445. The third factor however is a closer call. Plaintiff argues that because MOHELA performs a proprietary rather than governmental function it is not entitled to immunity.  The Missouri Supreme Court however stated that

> "[they] have avoided characterizing this requirement as calling for a governmental function; such terminology would confuse this requirement with the distinction between the two types of functions performed by municipalities and school districts, e.g., governmental versus proprietary. In fact, this requirement is much broader because we are asking whether this entity does what government has typically done in the past; because government performs both governmental and proprietary functions activities fitting within either of those categories should satisfy this requirement."

Stacy, 836 S.W.2d at 919. As a result, the question is not whether the entity is performing a proprietary function, but rather is the entity performing a function that the government has typically performed in the past. Neither party points to any case law indicating that the government has traditionally performed a function similar to MOHELA, but the language in the enabling act lends credence to the conclusion that MOHELA is "performing a service traditionally performed by the government." In Mo. Rev. Stat. § 173.360, the legislature states that its duties are deemed to be an "essential public function."  Additionally, the state has historically taken an active role in encourage students to attend university by establishing and overseeing public institutions, funding scholarships, and managing the Missouri

14

Financial Assistance Program. See Mo. Rev. Stat. §§ 173. 020 – 173.030; Mo. Rev. Stat. §§ 173.1101 et seq.  Therefore, based on my analysis I find that MOHELA is a public entity entitled to immunity under Mo. Rev. Stat. § 537.600.

Because I found that Defendant is entitled to immunity under Mo. Rev. Stat. § 537.600, I do not need to address the remaining issues.  However, for the sake of completeness I will briefly address both the equitable estoppel and amount in controversy issues.

## Equitable Estoppel

Defendant next argues that Plaintiff failed to state a claim for equitable estoppel. Since equitable estoppel is not a claim under Missouri law, I will grant Defendants motion as to this point. See Hoag v. McBride & Sons Inv. Co., Inc 967 S.w.2d 157, 171 (Mo. Ct. App. 1998) (citing Emery v. Brown Shoe Co., 287 S.W.2d 761, 768 (Mo. 1956); Dow Chemical Co. v. G.S. Robins & Co., 2006 WL 3511494 at *4 (E.D. Mo. Dec. 5, 2006).

## Amount in Controversy

Finally, Defendant argues that this Court does not have jurisdiction because the Plaintiff's claim does not satisfy the amount in controversy. In order to establish diversity jurisdiction under 28 U.S.C. § 1332, the Plaintiff must establish that there is complete diversity of citizenship and that the amount in controversy is more than $75,000. Defendant argues that Plaintiff failed to establish that the

amount in controversy is more than $75,000. Defendant argues that the actual amount in controversy should be measured by the difference between what plaintiff was required to pay under his repayment plan and what he would have been eligible to pay under an Alternative repayment plan. In this case, that would be approximately $700 per month. Defendant further argues that this amount should only be calculated from the time Plaintiff alleges he was eligible until he filed suit. While this calculation makes sense on the surface it does not consider the amount of interest capitalized because the Plaintiff entered forbearance, the harm to the Plaintiff's credit, or the potential for loan acceleration in the event of default. Since the Plaintiff's loans are for more than $75,000 and he seeks injunctive relief, I find that he has satisfied the amount in controversy. See Donley v. Sallie Mae, Inc. 2015 WL 1650097 at *4-5 (N.D. West Virginia Apr. 1, 2015) (indicating that the total value of the loan can be considered when determining the amount in controversy).

## CONCLUSION

Plaintiff Dykes sued MOHELA for state law tort violations. Under Missouri law public entities are entitled to immunity except in limited circumstance not relevant here. Because MOHELA is a public entity it is entitled to immunity under Missouri law and I will grant its Motion for Judgment on the Pleadings.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings, ECF No. [10], is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of July 2021.